**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *Plaintiff,* | § § § | |
| v. | § § | CRIMINAL ACTION NO. 4:10-CR-558-4 |
| LUIS ENRIQUE HERNANDEZ, *Defendant.* | § § § | |

## ORDER

Before the Court is Defendant Luis Enrique Hernandez's ("Hernandez") Motion for Compassionate Relief or Reduction of Sentence under the First Step Act of 2018. (Doc. No. 450). The Government has filed a response in opposition (Doc. No. 461) and Hernandez subsequently filed a reply. (Doc. No. 472). The Court ordered the medical records to be supplemented and the Government has now complied with this order. The Government does not claim that Hernandez has failed to exhaust his administrative remedies. Consequently, this Court will proceed on the merits of the motion.

**I.    Background**

Essentially, Hernandez and several co-conspirators executed an armed home invasion to steal large quantities of cocaine and drug proceeds. During the robbery, a 15-year-old girl was injured, and a child had a gun put to his head. On November 18, 2011, Hernandez pleaded guilty to Counts 1 and 3 of a four-count indictment. He pleaded guilty to Interference with Commerce by Threats or Violence (or aiding and abetting same) in violation of 18 U.S.C. §§ 1951(a) and (2) and Possession of a Firearm in Relation to a Drug Trafficking Offense (or aiding and abetting same) in violation of 18 U.S.C. §§ 924(c)(1)(A) and (2). The Court sentenced him to 84 months on each count to run consecutively. His appeal was dismissed for want of prosecution. (Doc. No. 395). A motion to reduce sentence was denied. (Doc. No. 390). A motion to vacate under 28

U.S.C. § 2255 was also denied. (Doc. No. 433). In 2020, the Fifth Circuit granted leave for Hernandez to file a successive § 2255 motion. (Doc. No. 441). That motion is pending.

He has now served approximately 75% of his 14-year sentence. He has been housed in the Victorville USP in Victorville, California, but was recently transferred to the facility in Terre Haute, Indiana. With good time credit, he is currently scheduled for release on December 25, 2022. His motion for compassionate release and his reply are based on: 1) the general proposition that he has served most of his sentence and there is no need for further incarceration; 2) the worry about the COVID-19 virus when combined with his comorbidities; and 3) his deteriorating health due to diabetes.

With regard to his first grounds, Hernandez contends that he has served the lion's share of his sentence, his release date is just 18 months away, and that his home detention eligibility date is a mere 12 months away. That being the case, he argues that he has satisfied any and all of the factors one might draw from 18 U.S.C. § 3553(a). Although Hernandez was sanctioned in 2012, he also suggests that his overall disciplinary history while in custody is minimal. He also argues that the Court should consider that the conditions of his confinement have become more severe because of COVID-19 lockdown. Finally, he compares his crime and sentence to other cases where individuals arguably committed more drastic crimes and either received lower sentences or relief under the First Step Act or both.

While Hernandez makes a cogent argument, the Court notes that the First Step Act was not enacted to be a vehicle to allow courts to order the release of inmates who are either unhappy with the sentence they received or who, in their own estimation, have successfully checked all of the § 3553(a) boxes. If that were true, every inmate would claim eligibility.

The COVID-related allegation in Hernandez's motion is that the Court needs to consider the dangers of COVID-19, especially as it affects an inmate with his health history. Hernandez

2

has type I diabetes as well as high blood pressure, both of which are well-known comorbidity factors for the COVID-19 virus. The current published statistics for the Terre Haute facility (as of June 24, 2021) indicate that there are no active cases of COVID-19 among the staff members and inmates (out of a total inmate population of over 1,100). There have been four deaths at Terre Haute over the length of the pandemic. All staff members and nearly 60% of the inmate population at Terre Haute USP and FCI combined have now been inoculated against COVID-19.[1] The inoculation program is ongoing. The protective measures instituted at Terre Haute are clearly having an effect, because the number of active COVID-19 cases has literally dwindled to nothing.

Hernandez argues that he is unusually susceptible to COVID-19 due to the fact that he is diabetic and has high blood pressure. The record demonstrates that Hernandez is 37 years old and is Hispanic, both of which also put him statistically at a higher risk for severe problems should he contract the COVID-19 virus.

Diabetes and high blood pressure were recognized by the CDC as comorbidities for the COVID-19 virus. Being hypertensive and having diabetes each increased the chances of serious side effects requiring hospitalization.[2] While these conditions are certainly worrisome, he contracted COVID-19 and survived without serious problems. Further, over half of the individuals at his current facility have been vaccinated thus far and, according to all governmental information sources, Hernandez's chances of contracting COVID-19 a second time are minimal.

The Court also agrees that being Hispanic and older are both characteristics that have

---

[1] *See* Bureau of Prisons (2021). COVID-19 Vaccine Implementation. https://www.bop.gov/coronavirus/
[2] *See* Centers for Disease Control and Prevention (2021). COVID-19 and People with Certain Medical Conditions. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

3

increased the severity of COVID-19, should one contract it.[3] There have been some questions raised as to whether the fact that being Hispanic actually makes one more susceptible or whether Hispanic numbers are higher than the comparison groups due to the fact that Hispanics find it more difficult to obtain quality medical care for a number of socio-economic reasons. If the latter is indeed the cause of the higher COVID-19 numbers, that differential should be minimized by the fact that Hernandez is in custody and has access to medical care. Further, while the CDC has indicated that being in the 30 to 39-year-old age bracket makes one more susceptible, its statistics were based upon those who were not vaccinated. All of these factors are in theory important, but in actuality Hernandez contracted COVID-19 and has survived—so at least at the present time these are not worrisome factors.

While this Court does not want to minimize the effects of COVID-19 should one contract it, Hernandez's more pertinent argument is the problems he is facing just due to diabetes. These include possible retinopathy. Generally, diabetic retinopathy is caused by damage to blood vessels at the back of the eye. It can lead to impairment or loss of vision. Mild cases can be treated with careful diabetes management. More serious cases may require laser treatment or surgery. Obviously, some severe cases progress to a total loss of vision.

Hernandez gets two injections of insulin per day. He has received laser surgery nine times while in custody according to his own account. This is in addition to the blood pressure medication he takes on a regular basis. He provided medical records in support of his motion, but they were incomplete. The Court then ordered the Government to provide a complete set of medical records which it purports to have done. These records confirm the diagnosis of diabetic retinopathy, but do not provide any explanation of the severity nor do they detail a prognosis or treatment plan. Some records describe it as proliferative while other records describe it as

---

[3] *See* Centers for Disease Control and Prevention (2021). COVID-19 Racial and Ethnic Disparities. https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/racial-ethnic-disparities/disparities-illness.html

4

"resolved" or "moderate" or "non-proliferative." Thus, based upon the evidence, this Court cannot with any degree of certainty describe the seriousness or danger which this condition might pose to Hernandez.

**II. Discussion**

Section 3582(c)(1)(A)(ii) requires any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(ii). The Government has argued that the policy statement allows a reduction for "extraordinary and compelling reasons," only if the reasons are "consistent with this policy statement." U.S. SENTENCING GUIDELINES MANUAL § 1B1.13(1)(A), (3) (U.S. SENTENCING COMM'N 2018). Application Note 1 explains that "extraordinary and compelling reasons exist under any of the circumstances set forth below." *Id.* § 1B1.13 cmt. n.1. These circumstances are: (a) suffering from a terminal illness or other medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (b) being at least 65 years old and "experiencing a serious deterioration in physical or mental health because of the aging process" and having "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less"; (c) the "death or incapacitation of the caregiver of the defendant's minor child or minor children" or the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner"; or (d) "[a]s determined by the Director of the Bureau of Prisons, . . . an extraordinary and compelling reason other than, or in combination with, the [above] reasons." *Id.* § 1B1.13 cmt. n.1. Hernandez does not fall within the auspices of subsection (a)-(c), so the only basis of his claim can be subsection (d), which only applies if extraordinary and compelling circumstances exist.

5

In the past, courts have differed on whether Application Note 1 applied to the consideration of prisoner motions by district courts after Congress passed the First Step Act. *Compare United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) ("U.S.S.G. § 1B1.13 cmt. n.1(D) no longer describes an appropriate use of sentence-modification provisions and is thus not part of the applicable policy statement binding the Court."), *with United States v. Saldana*, No. 19-7057, 2020 WL 1486892, at *3 (10th Cir. Mar. 26, 2020) (the district court did not err by considering § 1B1.13 commentary when determining whether an "extraordinary and compelling reason" existed that warranted a sentence reduction).

The Fifth Circuit has now put this debate to rest by holding that district courts are not bound by either the policy statement or the commentary when addressing a prisoner's motion under § 3582. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021). A district court is only bound by § 3582(C)(1) and § 3553(a). *Id.* Consequently, the Court will analyze this motion using those constraints. The Court, however, points out that if a prisoner moves for relief under § 3582(c)(1) as Hernandez has, and if he does not qualify under § 3582(c)(1)(A)(ii), then he must still provide extraordinary and compelling reasons that warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Thus, in Hernandez's case, the standard for compassionate leave is "extraordinary and compelling." *Id.* Congress does not define extraordinary and compelling and neither has the Sentencing Commission since the passage of the First Step Act.

In the instant case, Hernandez is 37 years old and he does not voice any specific health complaints that are not being treated by the BOP doctors. While his race, age, diabetes, and hypertension increase the risk of severe health problems if he is reinfected with COVID-19, the BOP has taken remarkable strides in protecting prisoners and Hernandez is now located at a facility that has no active COVID-19 cases. Moreover, between the vaccination program and the fact Hernandez has previously had COVID-19, it is currently unlikely that COVID-19 will

present a problem to him within the next 18 months. The most pressing problem suggested by the evidence is Hernandez's diabetes, which has led to retinopathy, but he is receiving treatment for that issue and it is a medical issue that would exist whether he was in custody or not. In fact, one of his arguments for release is that it would save the taxpayers the money that is being expended to treat him while he is in custody. (Doc. No. 472 at 15).

The real legal question is whether this combination of facts equates to "extraordinary and compelling reasons" for compassionate release. The Court finds they do not. Based upon the evidence provided, the Court finds there are no extraordinary or compelling circumstances, especially when compared to any other inmate, to release him at this time.

## III. Conclusion

The Court denies Hernandez's Motion for Compassionate Relief or Reduction of Sentence under the First Step Act of 2018. (Doc. No. 450).

SIGNED at Houston, Texas this 25 day of June, 2021.

Andrew S. Hanen
United States District Judge